**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SAMUEL OZODI ONYENWIKE          : | Civil Action No. RWT-06-2179 |
| A-77-509-538 | |
|     Petitioner                               : | |
| | |
|         v.                                     : | |
| | |
| MICHAEL CHERTOFF, SECRETARY   : | |
| DEPARTMENT OF HOMELAND | |
| SECURITY                                  : | |
|     Respondent | |

oo00oo

**MEMORANDUM OPINION**

This is a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus filed by counsel on behalf of Samuel Ozodi Onyenwike, an alien who is subject to an administratively final reinstated order of removal and is detained in the custody of United States Immigration and Customs Enforcement. The petition seeks judicial review of Petitioner's reinstated removal order and his continued detention pending removal. Counsel for Respondent[1] has filed a response seeking dismissal. Petitioner has also filed an emergency motion for a hearing on his petition. For the reasons that follow, the Court determines that no hearing is necessary, and this matter will be dismissed.

**I. Factual Background**

Petitioner is a native and citizen of Nigeria. On April 6, 1999, he attempted to enter the United States at Dulles International Airport using an alien registration card and passport belonging to another person, Gaius Onuegbu. Petitioner provided a sworn statement to an Immigration

---

[1] In a petition for habeas corpus relief under 28 U.S.C. § 2241, the proper respondent is the "person having custody of the person detained." See 28 U.S.C. § 2243. Petitioner is detained at the Worcester County Detention Center. Accordingly, Respondent's motion to substitute Ira Schockley, Warden of the Worcester County Jail, in lieu of Michael Chertoff, will be granted by separate Order.

Inspector that his true name was Abigi Onwezi and that he was born in Nigeria on July 20, 1952. A fingerprint comparison confirmed that he was an imposter. *See* Resp. Ex. A, Extract of Administrative Record at 11. Additionally, he admitted the alien registration card and passport that he presented were not his. *See id*. at 2.

Petitioner was denied admission to the United States and placed in "Expedited Removal Proceedings."[2] *See id*. at 4. On April 7, 1999, he was removed from the United States. *See id*. at 5. On or about June 19, 2001, Petitioner applied at the United States Consulate at Lagos, Nigeria for a nonimmigrant visa (B1/B2) to temporarily visit the United States, claiming he was attending a church convention. Petitioner failed to disclose in his visa application that he had been previously excluded and deported on April 7, 1999. *See id*. at 6-7. On July 12, 2001, Petitioner was granted a nonimmigrant visa to attend a church convention in Ohio from August 6 to August 17, 2001. *See id*. at 8.

On December 19, 2005, Petitioner applied for permanent residence (Form I-485), claiming that he was last admitted to the United States as a nonimmigrant visitor (B1/B2) on August 7, 2001. Petitioner submitted a Form I-94 which indicated entry into the United States on August 7, 2001, with permission to remain until August 6, 2003.[3] United States Citizenship and Immigration

---

[2] "Expedited Removal," pursuant to § 235(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b), provides that an alien arriving at a port of entry who is determined to be inadmissible under § 212(a)(7) of the INA, 8 U.S.C. § 1182(a)(7) (intended immigrant without valid visa or entry document), or under § 212(a)(6)(C) of the INA, 8 U.S.C. §1182(a)(6)(C) (fraud or misrepresentation), shall be ordered removed by the Immigration Officer without further hearing or review, and without appearing before an Immigration Judge. If the alien intends to apply for asylum, the statute provides for an "asylum only" hearing before an Immigration Judge. In this case, Petitioner did not seek asylum.

[3] CIS denied the adjustment application, questioning the authenticity of the Form I-94 because a B1/B2 nonimmigrant visa may be issued only for six-month periods, and never for longer than one year. The forms submitted by Petitioner purported to authorize a two-year period. *See* Resp. Ex. A at 10; *see also* 8 C.F.R. §214.2(b)(1). CIS assumed the truth of Petitioner's claimed admission, but denied the adjustment application because he was statutorily ineligible for an adjustment based on his prior immigration fraud and removal. *See id*. at 12.

Services (CIS) denied the application on July 20, 2006, *inter alia*, because he was ineligible to adjust his status to that of a lawful permanent resident due to his previous removal in 1999, had failed to obtain permission to reapply for admission, and had fraudulently obtained his nonimmigrant visa in 2001 by failing to disclose the fact of his prior removal. *See id.* at 9-13.

Petitioner was taken into custody by United States Immigration and Customs Enforcement on July 31, 2006. He was served with a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) that same day. By that notice, Petitioner was informed that he had previously been ordered removed on April 6, 1999, illegally reentered the United States, and that his April 6, 1999 removal order was being reinstated. *See id.* at 14.

Petitioner indicated on the Form I-871 that he wanted to contest reinstatement of the removal order and provided a sworn statement. In that statement, he claimed that his true name is Samuel Ozodi Onyenwike, and that he was born in Nigeria on July 25, 1955. Further, he attested that he did not know if he had ever been ordered removed or actually removed from the United States. *See id.* at 15-17. Subsequently, Petitioner was ordered removed from the United States pursuant to the reinstatement of his prior removal order. *See id.* at 14. Petitioner remains in custody pending removal.

**II. Analysis**

    **A. Judicial Review of Reinstated Order of Removal**

The Real ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, enacted May 11, 2005, provides that federal district courts lack jurisdiction, habeas or otherwise, to review removal orders.[4]

---

[4] The statute, as codified at 8 U.S.C. § 1252(b)(9) provides:

    Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to

Accordingly, this Court does not have jurisdiction to review the reinstated order of removal and this claim will be dismissed without prejudice. In order to obtain judicial review, petitioner must file for redress in the United States Court of Appeals for the Fourth Circuit. *See* 8 U.S.C. § 1252(a)(1), (a)(5).

If there was jurisdiction over this matter, this Court would note that the Attorney General is statutorily authorized to reinstate removal orders issued against certain aliens who subsequently unlawfully reenter the United States. *See* § 241(a)(5) of the INA, 8 U.S.C. § 1231(a)(5); *see also* 8 C.F.R. §241.8; *see generally Ferndandez-Vargas v. Gonzales*, ___ U.S. ___, 126 S.Ct. 2422 (June 22, 2006). The reinstatement provisions apply to aliens who reentered the United States prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and such application is not impermissibly retroactive. *See Ferndandez-Vargas*, 126 S. Ct. at 2427.

Reinstatement requires that: 1) the alien was previously removed or deported under an order of removal; and 2) the alien subsequently reentered the United States unlawfully. In this case, Petitioner does not deny that he was previously removed on April 7, 1999, in accordance with an order of removal. *See* Resp. Ex. A at 5. Further, a fingerprint comparison established that the fingerprints taken of Petitioner when he attempted to fraudulently enter the United States on April 6, 1999, match those taken of Petitioner on July 20, 2006. *See id*. at 18. The first condition for reinstatement is satisfied. Second, Petitioner reentered the United States with a B1/B2

---

remove an alien from the United States under this subchapter shall be available only in the judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

nonimmigrant visa which he had fraudulently obtained.  Specifically, Petitioner falsely claimed on his visa application that he had used no other names, he had never sought to enter the United States by fraud or misrepresentation, and that he had not been deported from the United States within the last five years.  *See id*. at 6-7.  In truth, Petitioner had attempted to enter this country on April 6, 1999, under a false name and had been deported on April 7, 1999.  *See id*. at 2-5.

### B.  Post Removal Order Detention

Post-removal-order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to effect the alien's removal from the United States and does not permit indefinite detention.  *See  Zadvydas v. Davis*,  533 U.S. 678, 700.  After a order of deportation becomes final, an alien may be held for a six-month period.  After this period:

> "[o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

*Id*. at 701.

In this case, Petitioner became subject to an administratively final removal order on July 31, 2006, when his prior removal order was reinstated.  This means the presumptively reasonable six-month detention period in *Zadvdas* does not expire until approximately January 29, 2007.  For this reason, Petitioner's challenge to his post-removal order detention will be dismissed without prejudice.

**III. Conclusion**

    For the reasons stated herein, the Court will dismiss the Petition without prejudice.  A separate Order follows.


Date: 12/8/06                                    /s/
                                                       ROGER W. TITUS
                                            UNITED STATES DISTRICT JUDGE